```
 1                      UNITED STATES DISTRICT COURT
                        EASTERN DISTRICT OF NEW YORK
 2

 3   ------------------------------------X
                                         :
 4   CHAD MCCRAY,                        :
                                         :   10-CV-01621
 5                  Plaintiff,           :
                                         :
 6              v.                       :   225 Cadman Plaza East
                                         :   Brooklyn, New York
 7   SOLOMON & SOLOMON, P.C.,            :
                                         :   June 25, 2010
 8                  Defendant.           :
     ------------------------------------X
 9

10        TRANSCRIPT OF CIVIL CAUSE FOR INITIAL CONFERENCE
               BEFORE THE HONORABLE JAMES ORENSTEIN
11                UNITED STATES MAGISTRATE JUDGE

12

13   APPEARANCES:

14   For the Defendant:         CHRISTOPHER M. HART, ESQ.
                                Goldberg Segalla LLP
15                              200 Old Country Road
                                Mineola, New York  11501
16

17

18   Court Transcriber:         RUTH ANN HAGER
                                TypeWrite Word Processing Service
19                              211 N. Milton Road
                                Saratoga Springs, New York  12866
20

21

22

23

24

25


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service
```

                                                                  2

1    (Proceedings began at 10:31 a.m.)
2              COURT CLERK:  Civil cause for initial conference,
3    McCray v. Solomon & Solomon, P.C., docket number 10-CV-01621.
4              Counsel, state your appearances for the record,
5    please.  For the plaintiff.
6              MR. GUGLIOTTA:  John Gugliotta.  I'm appearing on
7    behalf of the plaintiff and on behalf of the firm – special
8    appearing on behalf of the firm Krohn & Moss.
9              THE COURT:  Are you part of the firm of Krohn &
10   Moss?
11             MR. GUGLIOTTA:  No, I'm not.  They've --
12             THE COURT:  Were you in touch with Mr. McCray?
13             MR. GUGLIOTTA:  Not in touch with Mr. McCray, no.
14             THE COURT:  So what's your authority for being here?
15             MR. GUGLIOTTA:  My authority is I'm going to be
16   filing a notice of appearance.  Initially I was asked by the
17   firm to appear at this conference and represent the firm and
18   Mr. McCray.
19             THE COURT:  Does Mr. McCray know that you're here?
20             MR. GUGLIOTTA:  No.
21             THE COURT:  You don't represent him.
22             MR. GUGLIOTTA:  Well, I'm --
23             THE COURT:  You -- has he engaged you?
24             MR. GUGLIOTTA:  I'm an agent for the firm.  I'm not
25   taking over him.  I'm not subs --

3

1    THE COURT:  Oh, no, no.  I know.  But you're not
2 part of the firm.  Look, I wouldn't want --
3    MR. GUGLIOTTA:  No, but --
4    THE COURT:  -- a law firm that I sought to defend
5 somebody I don't know who isn't part of the firm to represent
6 me.  You'd have no authority to represent me.  You have no
7 authority to represent Mr. McCray.  So you're welcome to stay
8 and listen but as far as I --
9    MR. GUGLIOTTA:  I understand that, Your Honor.  I
10 just respectfully -- I was -- I'm acting on behalf of the
11 firm.  The firm has been retained by Mr. McCray.
12    THE COURT:  And the firm should be here.
13    MR. GUGLIOTTA:  And the firm hired me to come in and
14 handle this.
15    THE COURT:  Yeah.  They're not allowed to do that.
16    MR. GUGLIOTTA:  What they did ask me to do was file
17 a notice of appearance.
18    THE COURT:  When you do that -- when you do that I
19 assume you will be acting on the basis of a retainer by Mr.
20 McCray.  I'm positive -- sir, and I didn't get your last name.
21    MR. GUGLIOTTA:  Gugliotta, G-U-G-L-I-O-T-T-A.
22    THE COURT:  Okay.  I'm positive, Mr. Gugliotta, you
23 wouldn't presume to file a notice of appearance on behalf of a
24 client who hasn't retained you.
25    MR. GUGLIOTTA:  I would not do that, no, Your Honor.

```
                                                              4
 1              THE COURT:  So whenever you file a notice of
 2   appearance it will be because Mr. McCray knows that you
 3   actua -- you think you should act as his lawyer and he agrees
 4   to it.
 5              MR. GUGLIOTTA:  No, absolutely.
 6              THE COURT:  Yeah.
 7              MR. GUGLIOTTA:  I agree with that.  I --
 8              THE COURT:  So when you do that, great.  But right
 9   now as far as any of us knows, Mr. McCray has no desire for
10   you to be here.
11              MR. GUGLIOTTA:  Yeah.  I think in some courts and I
12   understand in this particular court it's not accepted, but
13   when counsel for a firm requests another attorney to specially
14   appear for them --
15              THE COURT:  Yeah.
16              MR. GUGLIOTTA:  -- they can come in and act on
17   behalf of --
18              THE COURT:  I've never understood why judges allow
19   that to go on because it seems to me entirely inconsistent
20   with the client's interests in choosing his counsel and I
21   don't see how it accords with ethical rules.
22              MR. GUGLIOTTA:  Well, the --
23              THE COURT:  I'm not saying it's a bad thing.  I just
24   don't see how it's permissible --
25              MR. GUGLIOTTA:  Yeah.
```

5

1   THE COURT:  -- and I don't permit it.  You're
2 welcome to stay and listen.  You have no role here.
3   MR. GUGLIOTTA:  I --
4   THE COURT:  And please tell the folks at Krohn &
5 Moss -- I think they've done this once before.  I may be wrong
6 about that -- never to do that in my cases again, because I
7 won't permit it and if we can't make progress here we'll
8 reconvene at a time when they do show up and they'll bear the
9 costs of having to do it a second time.
10  MR. GUGLIOTTA:  Yes.  Just for the record they did
11 request that I file notice of appearance, but for the same
12 reason you're saying I think --
13  THE COURT:  No, no.  No, they have -- it's -- you're
14 not doing anything bad.  They are.  They are failing to
15 represent their client and they're potentially increasing the
16 burdens on the defendant who might have to show up a second
17 time.  Hopefully we can avoid the need to do that but I'm not
18 sure so we'll see.
19       Is somebody from Krohn & Moss actually admitted in
20 this district, do you know?
21  MR. GUGLIOTTA:  Yes.
22  THE COURT:  Okay.
23  MR. GUGLIOTTA:  Adam Hill.
24  THE COURT:  Okay.  All right. And I'm sorry, you,
25 sir?

                                                                  6

1           MR. HART:  Good morning, Your Honor.  I'm
2    Christopher Hart.
3           THE COURT:  All right.  All right.  Mr. Hart, have
4    you obtained a copy of this Exhibit A?
5           MR. HART:  We have not.
6           THE COURT:  Who did you deal with, by the way, in
7    coming up with this proposed discovery plan?
8           MR. HART:  The individual's name was Nick Bontrager
9    [Ph.].
10          THE COURT:  Is he part of the firm?
11          MR. HART:  To my knowledge, yes.
12          THE COURT:  Okay.  All right.
13          Mr. Gugliotta, do you know facts?  I mean, do you
14   know anything about the calls to the mother-in-law?  Do you
15   know anything about that?
16          MR. GUGLIOTTA:  Well, I --
17          THE COURT:  Or do you know -- do you just know what
18   I know from the complaint?
19          MR. GUGLIOTTA:  I would -- based on what you said
20   before I'd prefer not to speak at all because you said --
21          THE COURT:  I understand that.
22          MR. GUGLIOTTA:  -- I really can't participate so
23   I --
24          THE COURT:  Yeah.
25          MR. GUGLIOTTA:  I think it wouldn't be helpful if I

```
 1  said anything.
 2            THE COURT:  Just wondered if you know anything.
 3            MR. GUGLIOTTA:  I know what -- I know the Secured
 4  Collection Practices Act case.  I know that there's certain
 5  claims that are being made --
 6            THE COURT:  Yeah.  I'm asking you if you know
 7  something that isn't in the complaint.
 8            MR. GUGLIOTTA:  What I do -- the only thing I know
 9  about specifically is that counsel had requested a copy of the
10  Exhibit A to the complaint which was an affidavit of the
11  mother-in-law.
12            THE COURT:  Um-hum.
13            MR. GUGLIOTTA:  And it has not been provided today.
14  I can't --
15            THE COURT:  I understand that.
16            MR. GUGLIOTTA:  I can't answer that.  What I can do
17  is I can make it my business to inquire and --
18            THE COURT:  I'll prepare an order because, you know,
19  frankly it wasn't included in the complaint that was filed and
20  it should have been.  I assumed that was an oversight but the
21  fact that it still hasn't been provided on request is
22  astounding to me.
23            MR. GUGLIOTTA:  Yeah.  I don't necessarily know if
24  it would be necessary with the complaint itself, but I think
25  it's indicated --
```

```
                                                              8
 1              THE COURT:  I'm sorry.
 2              MR. GUGLIOTTA:  Well, I --
 3              THE COURT:  Any -- come on.  The complaint says --
 4              MR. GUGLIOTTA:  No, Exhibit A.  That's what I'm
 5   saying.
 6              THE COURT:  Yeah.
 7              MR. GUGLIOTTA:  Once it mentions it it has to be in
 8   there and I think --
 9              THE COURT:  It has to be in there and it's just
10   astonishing to me that opposing counsel says, "Can I have it?"
11   and the answer isn't yes.
12              MR. GUGLIOTTA:  Well, we'll --
13              THE COURT:  Mr. Hart, what happened when you asked
14   for it?
15              MR. HART:  Mr. Bontrager is in LA.  Is -- that's
16   where we were speaking from.  He apparently looked into his
17   computer system to see if he could pull out the affidavit.  It
18   wasn't scanned into his system.  He indicated that he would
19   make an effort to get it to me as quickly as possible and I
20   have yet to see it.
21              THE COURT:  When was this?
22              MR. HART:  This was this week.  It was the most
23   recent conversation.
24              THE COURT:  When did you first ask for it?
25              MR. HART:  I wouldn't know that, to be honest with
```

9

```
 1  you.
 2              THE COURT:  All right.  And Mr. Hart, from what you
 3  know or what've you discussed with this other attorney, the --
 4  sorry, the one in LA, what's going to take so long to do
 5  discovery?  You have it going on into --
 6              MR. GUGLIOTTA:  Well, here's my concern, Judge.
 7  This firm has in the past had fictitious Exhibit As for which
 8  they've been sanctioned and the cases have been dismissed.
 9  And we would want to make a motion if there was no affidavit
10  and I don't mean to -- you know, I'm not sure that that's the
11  case here or not but certainly suspicious situation and
12  it's -- other district courts have addressed it.  We'd want to
13  make a motion to dismiss everything before we were compelled
14  to provide discovery.
15              THE COURT:  What would be the basis for dismissal?
16              MR. GUGLIOTTA:  Well, it would be a 12(b)(6) which I
17  guess would be converted into a Rule 56.
18              THE COURT:  Well, that doesn't state a claim --
19              MR. GUGLIOTTA:  Correct, correct.
20              THE COURT:  -- because it -- how does it
21  [inaudible] -- but in other words, you can strike reference to
22  Exhibit A and you'd still have a claim, right?
23              MR. HART:  That's arguable, Judge.  Our position
24  would be the mere fact that someone called in an attempt to
25  collect a debt.
```

```
                                                                  10
 1              THE COURT:  Calls daily.  Collection called --
 2   collection calls -- I suppose meant to say "to plaintiff on
 3   his cellular phone and home number."  And then I guess
 4   paragraph 16 "Defendant did not identify himself in subsequent
 5   communication by hanging up on plaintiff's answering machine
 6   without leaving messages."  I think just that paragraph would
 7   state a violation of the FPCA, no?
 8              MR. HART:  No.
 9              THE COURT:  You have to identify yourself.
10              MR. HART:  My position is that you can't necessarily
11   leave a communication on an answering machine because it's
12   acceptable to be heard by a third party.
13              THE COURT:  But don't you have to identify yourself?
14   Doesn't the statute require that?
15              MR. HART:  I assume -- no, I don't believe so.
16              THE COURT:  I see.  All right.  Well, file your
17   motion.  I'll enter an order requiring the plaintiff to file
18   Exhibit A today.
19              MR. HART:  And I'm not certain that we're filing the
20   motion, Judge.  I want to see the exhibit and --
21              THE COURT:  But you sort of got off on this topic
22   without answering the question that I've been asking
23   originally which is what's going to take so long in terms of
24   discovery.
25              MR. HART:  Nothing.  I just know that Your Honor
```

                                                                11

1  prefers to have discovery move while a motion is pending.  I'd
2  rather avoid expenses if the case was going to go away than be
3  doing depositions.
4           THE COURT:  All right.  Again, what -- what
5  discovery do you anticipate because you planned for --
6           MR. HART:  Before I do interrog --
7           THE COURT:  I don't suppose I could finish the
8  question, huh?  You plan for discovery that includes expert
9  disclosures and goes on through the end of next March.  What
10 expert disclosures do you anticipate?
11          MR. HART:  None.
12          THE COURT:  Okay.  What will take through March?
13          MR. HART:  Nothing.
14          THE COURT:  So why didn't you propose that?
15          MR. HART:  Well, I wanted to keep the discovery
16 schedule as long as possible to accommodate a possible motion
17 if we were to make it.
18          THE COURT:  I see.  Might it not be better to let me
19 decide whether discovery should proceed and by making a motion
20 to stay?
21          MR. HART:  Absolutely, Your Honor.
22          THE COURT:  Okay.  Well, if it would be better that
23 way perhaps it would be better to actually do it instead of
24 just wait for me to make a suggestion.
25          What discovery do you anticipate is actually needed?

```
                                                                12
 1              MR. HART:  Well, depending on what Exhibit A says --
 2              THE COURT:  Yeah.
 3              MR. HART:  -- we anticipate having the nonparty
 4   deposition of the mother-in-law.  We anticipate doing the
 5   standard interrogatories --
 6              THE COURT:  Yeah.
 7              MR. HART:  -- document demands, phone records we'll
 8   require.  We'll also need the deposition of the plaintiff, Mr.
 9   McCray, and that's probably all the discovery that --
10              THE COURT:  About three months really to get all
11   that done?  All right.  Standard interrogatory document
12   demands that you get the requests out, get a response within a
13   month, you have -- sounds like two depositions, maybe three.
14              MR. HART:  I would say three months might be tight,
15   Judge.
16              THE COURT:  Four months.
17              MR. HART:  I might need a little bit more time.
18              THE COURT:  Okay. Four months.  All right.  Do you
19   get any settlement talks with your adversary?
20              MR. HART:  Judge, they did propose a settlement and
21   we objected.
22              THE COURT:  Okay.  I'm going to set a settlement
23   conference in a few weeks.  There's no need for you guys to
24   spend a lot on discovery for a claim that has a statutory
25   damage of $1,000.00.  So if you settled in advance of the
```

                                                                13

1  conference, great; if not, I'll see you three, four weeks.
2  Okay.  What time?  Okay.  I'll see you all on July 20th.  When
3  I say "you all" I mean you, Mr. Hart, and then the attorney
4  who actually represents Mr. McCray.
5           MR. GUGLIOTTA:  Judge, is it possible just
6  [inaudible] to have something in Brooklyn I want to --
7           THE COURT:  Oh, yeah.
8           MR. GUGLIOTTA:  And, Your Honor, if I do appear
9  again I'll make sure that I'm retained.  Thank you.
10          THE COURT:  In the absence of any attorney actually
11 representing Mr. McCray I don't want Mr. McCray to be
12 prejudiced by his lack of representation here, so I'll order
13 his counsel to obtain a transcript of today's proceeding at no
14 cost to the client but, you know, cost to be borne by counsel
15 and to provide a copy to Mr. McCray.  All right.  The schedule
16 okay?
17          MR. HART:  Can we do the week before or week after
18 possibly, Judge?  Possibly July 15th or July 30th?
19          THE COURT:  15th at 11:00.  Okay.  And if Mr. Hill
20 or whoever is counsel of record at that point has a problem
21 with the dates then you guys can work it out and contact
22 chambers.  Okay.  Thank you all.
23          MR. HART:  Thank you.
24              (Proceedings concluded at 10:44 a.m.)
25                       *   *   *   *   *

14

1    I certify that the foregoing is a court transcript
2 from an electronic sound recording of the proceedings in the
3 above-entitled matter.
4
5                              *[signature: Ruth Ann Hager]*
6                              _____
7                                     Ruth Ann Hager
8 Dated: July 6, 2010